AMY J. LONGO (Cal. Bar No. 198304)
Email:  LongoA@sec.gov
SPENCER E. BENDELL (Cal. Bar No. 181220)
Email:  BendellS@sec.gov
CHRISTOPHER A. NOWLIN (Cal. Bar No. 268030)
Email:  NowlinC@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Western Division**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>   Applicant,<br><br>vs.<br><br>CHRISTINA MARIE DANIELS, KIM BENNETT, and VALENTINO MOCA,<br><br>   Respondents. | Case No. 2:19-mc-00023<br><br>**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR AN ORDER TO SHOW CAUSE AND APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH INVESTIGATIVE SUBPOENAS** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1
II.  STATEMENT OF FACTS ............................................................................. 1
    A.   The SEC's Formal Order of Investigation ...................................... 1
    B.   Respondents' Involvement with OwnZones ................................... 2
    C.   The SEC's Subpoenas to Respondents ........................................... 3
    D.   Respondents' Refusals to Produce Documents and Appear for Testimony ........................................................................................ 4
III. ARGUMENT .................................................................................................. 6
    A.   This Court Has Jurisdiction to Enforce the SEC's Validly Issued Administrative Subpoenas in a Summary Proceeding ................... 6
    B.   The SEC's Administrative Subpoenas to Respondents Should Be Enforced ........................................................................................... 7
    C.   Respondents Have No Valid Basis for Failing to Comply with the SEC's Subpoenas ........................................................................ 11
IV.  CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Administrator, US EPA v. Alyeska Pipeline Serv. Co.*,
    836 F.2d 443 (9th Cir. 1988) ................................................................. 10

*EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.*,
    719 F.2d 1426 (9th Cir. 1983) ............................................................... 10

*EEOC v. Karuk Tribe Housing Auth.*,
    260 F.3d 1071 (9th Cir. 2001) ............................................................... 10

*EEOC v. St. Regis Paper Co.-Kraft Div.*,
    717 F.2d 1302 (9th Cir. 1983) ................................................................. 7

*Endicott Johnson v. Perkins*,
    317 U.S. 501 (1943) ............................................................................... 10

*Flatt v. SEC*,
    Case No. 10-60073-MC,
    2010 WL 1524328 (S.D. Fla. Apr. 14, 2010) ......................................... 9

*Gewerter v. SEC*,
    Case No. CV-16-02556-PHX-DLR,
    2016 WL 4074117 (D. Ariz. July 29, 2016) ........................................... 9

*In the Matter of an Application to Enforce Admin. Subpoena of the SEC v. Bobby Jones*,
    Case No. CV 13-08314 DDP (Ex),
    2013 WL 6536085 (C.D. Cal. Dec. 13, 2013) ........................................ 7

*Nelson v. SEC*,
    Case No. C08-80080MISC JF (HRL),
    2008 WL 2444794 (N.D. Cal. June 16, 2008) ........................................ 9

*RNR Enters., Inc. v. SEC*,
    122 F.3d 93 (2d Cir. 1997) ..................................................................... 8

*Rosiere v. SEC*,
    Case No. 2:09 CV 01975 JCM PAL,
    2010 WL 489526 (D. Nev. Feb. 5, 2010) ............................................... 9

*Sansend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
    878 F.2d 875 (5th Cir. 1989) .................................................................. 9

*SEC v. Blackfoot Bituminous, Inc.*,
    622 F.2d 512 (9th Cir. 1980) ............................................................. 8, 11

*SEC v. Brigadoon Scotch Distributing Co.*,
    480 F.2d 1047 (2d Cir. 1973) ............................................................ 7, 11

*SEC v. Custodian of Records R.R. Donnelley & Sons Co.*,
    Case No. 12-CV-07331-SVW-CW,
    2012 WL 12930953 (C.D. Cal. Oct. 11, 2012) .................................. 6, 8

*SEC v. Harman Wright Group, LLC*,
  Case No. CV-18-MC-00190-CMA,
  2018 WL 6102758 (D. Colo. Nov. 21, 2018) ............................................. 8, 10

*SEC v. Howatt*,
  525 F.2d 226 (1st Cir. 1975) ................................................................... 9

*SEC v. Jerry T. O'Brien, Inc.*,
  467 U.S. 735 (1984) ................................................................................. 8

*SEC v. McCarthy*,
  322 F.3d 650 (9th Cir. 2003) .................................................................. 7

*SEC v. Sprecher*,
  594 F.2d 317 (2d Cir. 1979) .................................................................. 7

*SEC v. Tajyar*,
  Case No. MC 18-00113-DMG (RAOx),
  2018 WL 6313475 (C.D. Cal. Oct. 15, 2018), *adopted by* 2018 WL
  6308106 (C.D. Cal. Nov. 30, 2018) ........................................................ 8

*U.S. v. Morton Salt Co.*,
  338 U.S. 632 (1950) ................................................................................ 8

*United States v. Church of Scientology of Cal.*,
  520 F.2d 818 (9th Cir. 1975) .............................................................. 7, 9

*United States v. Jose*,
  131 F.3d 1325 (9th Cir. 1997) ............................................................ 8, 11

*United States v. Powell*,
  379 U.S. 48 (1964) ................................................................................. 7

**FEDERAL STATUTES**

**Securities Act of 1933**

Section 19(b)
  [15 U.S.C. § 77s(b)] .............................................................................. 2

Section 19(c)
  [15 U.S.C. § 77s(c)] ............................................................................. 11

Section 20(a)
  [15 U.S.C. § 77t(a)] .............................................................................. 8

Section 21(b)
  [15 U.S.C. § 77u(b)] ............................................................................ 11

Section 22(b)
  [15 U.S.C. § 77v(b)] ........................................................................... 6, 7

**Securities Exchange Act of 1934**

Section 21(b)
  [15 U.S.C. § 78u(b)] ......................................................................... 2, 8

Section 21(c)
    [15 U.S.C. §78u(c)] ...................................................................................6
Section 21(e)
    [15 U.S.C. § 78u(e)] ..................................................................................7

**FEDERAL REGULATIONS**

17 C.F.R. § 200.30-4(a)(1)................................................................................11
17 C.F.R. § 201.150(c)........................................................................................3
17 C.F.R. § 201.150(c)(1) .................................................................................11
17 C.F.R. § 201.232(c).................................................................................3, 11
17 C.F.R. § 203.8 .........................................................................................3, 11

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC") asks this Court to compel respondents Christina Marie Daniels ("Ms. Daniels"), Kim Bennett ("Ms. Bennett), and Valentino Moca ("Mr. Moca") (together, "Respondents") to produce documents and appear for investigative testimony pursuant to SEC investigative subpoenas.

The subpoenas relate to an ongoing, nonpublic investigation by the SEC to determine whether OwnZones Media Networks, Inc. ("OwnZones") and certain other individuals and/or entities may have violated the federal securities laws. Through its investigation, the SEC seeks information regarding, among other things, whether OwnZones made misrepresentations to investors and conducted an unregistered offering without satisfying any exemptions from registration, and whether others who raised money for OwnZones also engaged in securities fraud or offered or sold securities in unregistered transactions. Respondents appear to be among the most prolific fundraisers for OwnZones.

As part of its ongoing investigation, the SEC served administrative subpoenas for the production of documents and investigative testimony on Respondents. The subpoenas sought documents regarding the Respondents' communications and agreements with OwnZones and the Respondents' efforts to raise money for the company, as well as Respondents' testimonies regarding those same matters. Respondents have ignored the subpoenas and the SEC's attempts to contact them, failing to both produce the requested documents and appear for testimony. Consequently, the SEC now asks the Court to intervene and compel Respondents to comply.

## II. STATEMENT OF FACTS

### A. The SEC's Formal Order of Investigation

On June 1, 2018, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation titled *In the Matter of OwnZones Media Network, Inc.* (SEC File No. LA-4922) ("Formal Order"). *See*

1

Declaration of Christopher A. Nowlin ("Nowlin Decl.") ¶ 4, Ex. 1. Among other things, the Formal Order empowers the SEC staff to investigate whether any persons or entities may have violated the antifraud and registration provisions of the federal securities laws regarding, among other things, the offer, sale, or purchase of OwnZones securities. *Id.* The Formal Order also designates and authorizes certain SEC staff to issue subpoenas in this investigation to obtain documents and to take testimony. *See id.*; 15 U.S.C. §§ 77s(b), 78u(b).

The three subpoenas that are the subject of this application (the "October 30, 2018 subpoenas") were issued on October 30, 2018 pursuant to the Formal Order and are part of the SEC's investigation regarding investments in OwnZones. Nowlin Decl. ¶¶ 8-13, Exs. 2-7.

### B. Respondents' Involvement with OwnZones

Through its investigation regarding investments in OwnZones, the SEC staff has learned that Respondents are investors in OwnZones and likely were involved in raising substantial amounts of money for the company. Nowlin Decl. ¶ 7.

For instance, Ms. Daniels, who, according to OwnZones' documents invested over $1.1 million in OwnZones as recently as September 2016, *id.* ¶ 14, Ex. 8 at 134, solicited dozens of people to invest in the company, *id.* ¶ 15, Ex. 9. In fact, a substantial amount of the money ostensibly invested in Ms. Daniels' own name was actually money raised from other individuals whom she solicited. *Id.* ¶¶ 15-16, Exs. 9-10. Ms. Daniels may have brought upwards of $2 million to OwnZones, either by finding investors to directly invest in the company or aggregating money from "subinvestors" under her own name. *Id.* ¶ 15, Ex. 9. The SEC's investigation has further revealed that OwnZones' principal, Dan Goman, may have offered Ms. Daniels a five percent commission for money she brought in from investors. *Id.* ¶ 16, Ex. 10.

Ms. Bennett likewise purportedly invested a large amount of money in OwnZones, some of which may have been raised from other investors. According to

documents received in the investigation, Ms. Bennett invested in excess of $580,000 in OwnZones in July 2017. *Id*. ¶ 17, Ex. 11 at 160. When the SEC staff contacted Ms. Bennett in July 2018 prior to serving her with a subpoena, she refused to voluntarily discuss the source of this money that she invested in OwnZones. *Id*. ¶ 18. Documents received in the investigation suggest Ms. Bennett was involved in raising money from others for OwnZones and that some of this money may have been aggregated under Ms. Bennett's own account. *Id*. ¶¶ 19-20, Exs. 12-13.

Lastly, the SEC staff has learned that Mr. Moca, who according to OwnZones' records invested over $1.4 million in the company between November 2015 and May 2018, *id*. ¶¶ 21-22, Ex. 14 at 176, may have solicited others to invest in OwnZones and played a role in coordinating the investments of numerous individuals, *id*. ¶¶ 23-24, Exs. 15-16.

**C.    The SEC's Subpoenas to Respondents**

In light of Respondents' status as large investors and apparent involvement in raising substantial sums of money for OwnZones, the SEC staff issued subpoenas to Respondents on October 30, 2018.[1] These three subpoenas sought documents and testimony from Respondents, and they are the subpoenas that are the subject of this Application. *See* Nowlin Decl. ¶¶ 8, 10, 12 and Exs. 2, 4, 6. The SEC staff personally served Respondents at their home addresses. *Id*. ¶¶ 9, 11, 13 and Exs. 3, 5, 7.

The SEC's October 30, 2018 subpoenas were tailored to obtain information regarding investments in OwnZones. They specifically requested documents concerning communications between Respondents and OwnZones personnel; the

---

[1] In early October 2018, the SEC staff served subpoenas on Respondents by UPS overnight delivery. Respondents failed to respond. Although such service is valid, 17 C.F.R. §§ 203.8, 201.232(c) & 201.150(c), in order to foreclose any possibility that Respondents did not receive notice of their subpoenas, the SEC staff issued new subpoenas on October 30, 2018 that were personally served on Respondents. These October 30, 2018 subpoenas are the subject of this application.

identities of, and communications with, persons who Respondents solicited to invest in OwnZones; documents that were shown or provided to prospective investors in OwnZones; and the uses of funds raised for investments in OwnZones. *See id.* ¶¶ 8, 10, 12 and Ex. 2 at 25-26, Ex. 4 at 62-63, Ex. 6 at 99-100. The subpoenas also required Respondents to appear for investigative testimony. *Id.* ¶¶ 8, 10, 12 and Ex. 2 at 21, Ex. 4 at 58, Ex. 6 at 95.

### D. Respondents' Refusals to Produce Documents and Appear for Testimony

Respondents utterly failed to comply with the SEC's subpoenas.

Ms. Daniels was personally served with the investigative subpoena on October 30, 2018. Nowlin Decl. ¶ 9, Ex. 3. The subpoena required Ms. Daniels to produce all documents responsive to the subpoena to the SEC by November 14, 2018, and to appear for testimony at the SEC's Los Angeles Regional Office on November 27, 2018. *Id.* ¶ 8, Ex. 2 at 21. On November 30, 2018, after Ms. Daniels failed to respond to the subpoena by the designated dates, the SEC staff sent a letter via UPS overnight mail to Ms. Daniels, stating that she had failed to comply with the subpoena and that the SEC would evaluate its remedies, which could include filing a subpoena enforcement action in federal court. *Id.* ¶ 25, Ex. 17. The letter to Ms. Daniels called for her to produce all responsive documents by December 6, 2018 and agree to make herself available for testimony on a mutually agreeable date on or before December 11, 2018. *Id.* The letter noted that in the absence of agreement on a testimony date, Ms. Daniels' testimony would take place on December 11, 2018 at the SEC's Los Angeles Regional Office. *Id.* The SEC staff received confirmation that this letter was delivered. *Id.* ¶ 26, Ex. 18. Ms. Daniels never responded to the SEC's subpoena or follow-up correspondence. *Id.* ¶ 27. She has neither produced documents nor appeared for testimony as required by the subpoena. *Id.*

Ms. Bennett also failed to respond to the SEC's subpoena. A process server personally served Ms. Bennett's adult son with a subpoena at Ms. Bennett's place of

residence on October 29, 2018. *Id*. ¶ 11, Ex. 5.  The subpoena required Ms. Bennett to produce documents responsive to the subpoena by November 14, 2018 and to appear for testimony at the SEC's Los Angeles Regional Office on November 20, 2018. *Id*. ¶ 10, Ex. 4 at 58.  On November 26, 2018, after the subpoena deadlines had passed, the SEC staff sent a letter via UPS overnight mail to Ms. Bennett, stating that she had failed to comply with the subpoena and that the SEC would evaluate its remedies, which could include filing a subpoena enforcement action in federal court. *Id*. ¶ 28, Ex. 19.  The letter to Ms. Bennett called for her to produce all responsive documents by December 3, 2018 and agree to make herself available for testimony on a mutually agreeable date on or before December 7, 2018.  *Id*.  The letter noted that in the absence of agreement on a testimony date, Ms. Bennett's testimony would take place on December 10, 2018 at the SEC's Los Angeles Regional Office.  *Id*.  The SEC staff received confirmation that this letter was delivered.  *Id*. ¶ 29, Ex. 20.  Ms. Bennett never responded to the SEC's subpoena or follow-up correspondence.  *Id*. ¶ 30.  She has neither produced documents nor appeared for testimony as required by the subpoena.  *Id*.

Like Ms. Daniels and Ms. Bennett, Mr. Moca simply ignored the SEC's subpoena to him.  Mr. Moca was personally served with the investigative subpoena on November 2, 2018.  *Id*. ¶ 13, Ex. 7.  The subpoena required Mr. Moca to produce all documents responsive to the subpoena to the SEC by November 14, 2018, and to appear for testimony at the SEC's Los Angeles Regional Office on November 29, 2018.  *Id*. ¶ 12, Ex. 6 at 95.  On December 13, 2018, after Mr. Moca failed to respond to the subpoena, the SEC staff sent Mr. Moca a letter via UPS overnight mail, stating that he had failed to comply with the subpoena and that the SEC would evaluate its remedies, which could include filing a subpoena enforcement action in federal court. *Id*. ¶ 31, Ex. 21.  The letter to Mr. Moca called for him to produce all responsive documents by December 20, 2018 and agree to make himself available for testimony on a mutually agreeable date on or before January 3, 2019.  *Id*.  The letter noted that

in the absence of agreement on a testimony date, Mr. Moca's testimony would take place on January 3, 2019 at the SEC's Los Angeles Regional Office. *Id*. The SEC staff received confirmation that this letter was delivered. *Id*. ¶ 32, Ex. 22. Mr. Moca never responded to the SEC's subpoena or follow-up correspondence. *Id*. ¶ 33. He has neither produced documents nor appeared for testimony as required by the subpoena. *Id*.

### III. ARGUMENT

Respondents' ongoing refusal to comply with the SEC's administrative subpoenas is hindering and delaying the SEC staff's investigation to determine whether violations of the federal securities laws have occurred or continue to occur. Accordingly, the SEC now asks the Court to compel Respondents to produce documents responsive to the subpoenas and appear for their investigative testimonies.

### A. This Court Has Jurisdiction to Enforce the SEC's Validly Issued Administrative Subpoenas in a Summary Proceeding

When subpoenaed parties, such as Respondents, refuse to comply with SEC administrative subpoenas issued in the course of an investigation, the SEC is authorized to seek court orders compelling compliance. *See* 15 U.S.C. §§ 77v(b), 78u(c). Section 22(b) of the Securities Act of 1933 ("Securities Act") and Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act") specifically grant jurisdiction over these subpoena enforcement actions to district courts.

Moreover, an SEC subpoena enforcement action may be brought in any federal court "within the jurisdiction of which such investigation or proceeding is carried on." 15 U.S.C. § 78u(c). This Court therefore "has jurisdiction over the instant subpoena enforcement action because the Commission's Los Angeles Regional Office is conducting this investigation." *SEC v. Custodian of Records R.R. Donnelley & Sons Co.*, No. 12-CV-07331-SVW-CW, 2012 WL 12930953, at *1 (C.D. Cal. Oct. 11, 2012); *see also In the Matter of an Application to Enforce Admin. Subpoena of the SEC v. Bobby Jones*, No. CV 13-08314 DDP (Ex), 2013 WL 6536085, at *2

(C.D. Cal. Dec. 13, 2013) (denying motion to change venue in subpoena enforcement action).

The court may grant an application to enforce an investigative subpoena in a summary proceeding. *EEOC v. St. Regis Paper Co.-Kraft Div.*, 717 F.2d 1302, 1304 (9th Cir. 1983) ("[a] subpoena enforcement action is a summary procedure" with no discovery absent "exceptional circumstances"); *see also SEC v. McCarthy*, 322 F.3d 650, 655-59 (9th Cir. 2003) (Section 21(e) of the Exchange Act permits the court to enforce an SEC subpoena in a summary proceeding "upon application from the Commission"); *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (Section 22(b) of the Securities Act permits courts to enforce a subpoena in summary proceeding "upon application by the Commission"); *United States v. Church of Scientology of Cal.*, 520 F.2d 818, 821 (9th Cir. 1975) ("a district court may limit the application [of the federal rules of civil procedure] in a proceeding to enforce a summons which is intended to be a summary proceeding"). This summary procedure, rather than an action instituted by complaint, is appropriate because investigative agencies, like the SEC, "must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973). This Court therefore may rule upon the SEC's application in a summary show cause proceeding.

**B.  The SEC's Administrative Subpoenas to Respondents Should Be Enforced**

An administrative agency's investigative subpoenas should be judicially enforced if the following criteria are met: (1) the SEC's "investigation will be conducted pursuant to a legitimate purpose," (2) the subpoena seeks information that "may be relevant to the purpose," (3) "the information sought is not already within the [SEC's] possession," and (4) all "administrative steps required…have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964) (enforcing IRS

7

subpoena); *see also United States v. Jose*, 131 F.3d 1325, 1327-28 (9th Cir. 1997) (quoting *Powell*); *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 513-14 (9th Cir. 1980). Indeed, courts routinely grant relief in SEC subpoena enforcement proceedings upon the requisite showing. *See, e.g., R.R. Donnelley & Sons*, 2012 WL 12930953; *SEC v. Tajyar*, No. MC 18-00113-DMG (RAOx), 2018 WL 6313475 (C.D. Cal. Oct. 15, 2018) (Rozella, Mag. J.), *adopted by* 2018 WL 6308106 (C.D. Cal. Nov. 30, 2018); *SEC v. Harman Wright Group, LLC*, No. CV-18-MC-00190-CMA, 2018 WL 6102758 (D. Colo. Nov. 21, 2018). An affidavit from a government official is sufficient to establish that the *Powell* requirements have been met. *See RNR Enters., Inc. v. SEC*, 122 F.3d 93, 97 (2d Cir. 1997); *see also Harman Wright Group*, 2018 WL 6102758, at *2 (clarifying that the SEC's burden is a "slight one" generally satisfied by an affidavit from the agent seeking enforcement).

In this case, all of the requirements are met for enforcement of the SEC's subpoena. First, the SEC's investigation is being conducted pursuant to a lawfully authorized and legitimate purpose. "The provisions vesting the SEC with power to issue and seek enforcement of subpoenas are expansive." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984); *see also U.S. v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). When Congress created the SEC and assigned to it the responsibility of protecting investors, it gave the SEC broad authority to conduct investigations and to demand the production of evidence relevant to such investigations. *O'Brien, Inc.*, 467 U.S. at 741. This authority includes the power to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b); *see also* 15 U.S.C. § 77t(a).

Here, the SEC has exercised its broad statutory authority and authorized the SEC staff to investigate, among other things, whether the antifraud or other provisions of the federal securities laws have been or are being violated in connection with the offer, sale, or purchase of OwnZones securities. The SEC authorized this

investigation by issuing a Formal Order on June 1, 2018. Nowlin Decl. ¶ 4, Ex. 1. The SEC's investigation and the subpoenas issued to Respondents are unquestionably within the scope of the Formal Order and the SEC's authorized law-enforcement powers.

Second, the information sought by the SEC's subpoenas is relevant to the SEC's investigation. The subpoenas seek information regarding Respondents' communications and agreements with OwnZones and Respondents' own investments in and efforts to raise money for the company, as well as Respondents' testimony regarding those same matters. In order to subpoena documents as it conducts an investigation, the SEC need not make out a "probable" or "reasonable" cause showing. *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *see also Church of Scientology of Cal.*, 520 F.2d at 821 (federal agency "need not meet any standard of probable cause to obtain enforcement of its summons"). Indeed, in the context of an administrative investigation, "the notion of relevancy is a broad one. An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not. So long as the material requested *touches* a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *Flatt v. SEC*, No. 10-60073-MC, 2010 WL 1524328, at *5 (S.D. Fla. Apr. 14, 2010) (quoting *Sansend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989)); *see also Rosiere v. SEC*, No. 2:09 CV 01975 JCM PAL, 2010 WL 489526, at *3 (D. Nev. Feb. 5, 2010); *Gewerter v. SEC*, No. CV-16-02556-PHX-DLR, 2016 WL 4074117, at *2 (D. Ariz. July 29, 2016).

The relevancy required to enforce an investigative subpoena is much broader than in litigation. *See Nelson v. SEC*, No. C08-80080MISC JF (HRL), 2008 WL 2444794, at *2 (N.D. Cal. June 16, 2008). The Ninth Circuit has therefore noted that "'[t]he scope of the judicial inquiry in an…agency subpoena enforcement proceeding is quite narrow.'" *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076 (9th

Cir. 2001) (quoting *EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)). Thus, a court must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency. *Karuk Tribe Housing Auth.*, 260 F.3d at 1076; *see also Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943); *Administrator, US EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 447 (9th Cir. 1988); *Harman Wright Group*, 2018 WL 6102758, at *2.

The minimal relevance required to enforce these administrative subpoenas is easily satisfied here. The SEC is investigating whether there have been violations of the federal securities laws, including whether OwnZones made misrepresentations to investors or conducted an unregistered offering without satisfying any exemption from registration, and whether others who raised money for OwnZones, including Respondents, also engaged in securities fraud or acted as unregistered brokers or offered or sold securities in unregistered transactions. These subpoenas seek the basic information necessary to determine whether there have been violations and, if so, who was involved in them and how they were conducted. Because Respondents are investors in OwnZones and appear to be large fundraisers for the company, the SEC's subpoenas meet the relevance requirement to its lawful investigation.

Third, the documents and information sought are not in the SEC's possession. Respondents have not produced any documents requested by the subpoenas, and have not produced any communications between them and OwnZones. Moreover, Respondents have not appeared for testimony, and therefore the SEC lacks complete information regarding, among other things, Respondents' oral communications with OwnZones or other investors, including communications that might shed light on Respondents' roles in OwnZones' fundraising.

Fourth, the SEC has satisfied all of the administrative prerequisites. The federal securities laws authorize the SEC to compel the attendance of witnesses and require the production of any book, papers, or other documents that the SEC deems

relevant or material to its investigation. *See* 15 U.S.C. §§ 77s(c), 77u(b). Here, the SEC's subpoenas were issued pursuant to a Formal Order and signed by an SEC attorney who is specifically designated by the Formal Order to issue subpoenas. *See* 17 C.F.R. § 200.30-4(a)(1). The SEC personally served Respondents with the subpoenas.[2] Nevertheless, the Respondents have chosen to ignore the subpoenas.

### C. Respondents Have No Valid Basis for Failing to Comply with the SEC's Subpoenas

Because the SEC has established that its subpoenas were lawfully issued, the burden shifts to Respondents to establish an affirmative defense for failing to comply with the subpoenas. Respondents bear a heavy burden when "the agency inquiry is authorized by law and the materials sought are relevant to the inquiry." *Brigadoon Scotch Dist. Co.*, 480 F.2d at 1056; *see also U.S. v. Jose*, 131 F.3d at 1328 (after *prima facie* case made to enforce investigative summons, heavy burden fell on respondent); *Blackfoot Bituminous*, 622 F.2d at 515 (respondent has burden of showing a defense to enforcement).

Respondents will not be able to meet this high burden. They simply have no justifiable excuse for not responding in any way to the SEC or its subpoenas.

## IV. CONCLUSION

The SEC respectfully requests that the Court grant its application and issue: (i) an order, in the form submitted, requiring Respondents to show cause why they should not be ordered to comply with the subpoenas; (ii) if Respondents fail to show adequate cause to support their refusal to comply with the subpoenas, an order requiring them to comply immediately with the subpoenas to produce all responsive

---

[2] Ms. Bennett was validly served by substitute service on another adult in her home. 17 C.F.R. §§ 203.8, 201.232(c), 201.150(c)(1).

11

documents and appear for testimony at the SEC's Los Angeles Regional Office; and (iii) such other and further relief as may be necessary and appropriate to achieve compliance with the subpoenas directed to Respondents.

Dated: February 14, 2019   Respectfully submitted

 */s/ Amy J. Longo*
Amy J. Longo
Spencer E. Bendell
Christopher A. Nowlin
Attorneys for Plaintiff
Securities and Exchange Commission